**Elise Oubre MARTIN**

v.

**Steven MARTIN, Sr.**

NO. 2016–CA–0324

Court of Appeal of Louisiana,
Fourth Circuit.

November 16, 2016

718

Theon A. Wilson, 2900 Entergy Centre, 1100 Poydras Street, New Orleans, LA 70163, COUNSEL FOR PLAINTIFF/APPELLANT

Lakeisha N. Jefferson, 4238 Poche Court West, New Orleans, LA 70129, COUNSEL FOR DEFENDANT/APPELLEE

(Court composed of Judge Terri F. Love, Judge Roland L. Belsome, Judge Joy Cossich Lobrano)

Judge Roland L. Belsome

This appeal arises out of the modification of a 2009 final periodic spousal support award. Elise Oubre Martin seeks review of the trial court's judgment that reduced the amount of spousal support paid to her by her former husband, Steven Martin. She also seeks review of the retroactive date of the modification set by the trial court. For the reasons discussed below, the judgment of the trial court is affirmed.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Elise Oubre Martin and Steven Martin, Sr. were married in April 1988. They had been married for almost twenty years when Ms. Martin filed for divorce in April 2007. In August 2007, Mr. and Ms. Martin entered into a consent judgment that provided that he would pay the mortgage on the family home and pay her $2,000 a month in interim spousal support. In October 2007, the interim support award was modified to reflect a $1,000 a month decrease in the amount Mr. Martin paid directly to Ms. Martin. The final judgment of divorce was granted in November 2007. Subsequent to the divorce being finalized, the trial court entered a judgment regarding final spousal support, which provided that Mr. Martin would pay Ms. Martin $2,441 a month as agreed upon by the parties. The judgment was signed on June 23, 2009, and provided no effective date for final support and no termination date for interim support. When the amount of final periodic spousal support was set, Mr. Martin was employed by the New Orleans Hornets NBA franchise as the Senior Vice President of Community Involvement, earning a salary of approximately $150,000 a year. As Ms. Martin's poor health prevented her from working, her only sources of income were spousal support and Social Security disability.

In July 2009, Ms. Martin filed a motion for contempt due to Mr. Martin's failure to pay his monthly support obligation. The trial court found Mr. Martin to be in contempt, ordered him to pay attorney's fees and court costs, and entered an Income Assignment Order requiring the Hornets to garnish $2,440 a month from Mr. Martin's wages to satisfy his support obligation. The wage garnishment continued for the duration of Mr. Martin's employment with the Hornets.

In September 2011, Mr. Martin's employment with the Hornets terminated. At that time, Mr. Martin and the Hornets entered into a Confidential Separation Agreement. The agreement provided that the Hornets would pay Mr. Martin a one-

time separation payment of $50,549.30 and included a provision for a possible $5,000 for future consulting services. After the termination, Mr. Martin filed for and received unemployment benefits. Mr. Martin applied for many positions across the country, but was unable to secure employment that offered compensation similar to his salary with the Hornets.

Mr. Martin filed a *Rule to Show Cause Why Spousal Support Should Not Be Suspended or Decreased* on October 12, 2012. He asserted that his loss of employment constituted a material change in circumstances sufficient to warrant a termination or modification of his spousal support obligation to Ms. Martin. The matter was continued and reset several times over the next few years by agreement of counsel. Between his filing the rule and the court hearing the matter, Mr. Martin was found to be in contempt for failure to pay spousal support on two more occasions. In January 2015, the trial court set his arrears at $59,269.

In November 2015, the trial court heard Mr. Martin's rule, along with Ms. Martin's fourth motion for contempt filed in September 2015. On December 18, 2015, the trial court issued a judgment that held Mr. Martin in contempt for his failure to pay spousal support and sentenced him to serve 30 days in jail unless he paid a $15,000 purge amount by January 4, 2016. He was also ordered to pay attorney's fees and costs in the amount of $4,500.

With regard to Mr. Martin's rule, the trial court ordered the modification of Mr. Martin's final periodic spousal support obligation. The court reduced the spousal support to $1,400 a month, made the modification retroactive to the filing date of October 19, 2012, and set and made executory Mr. Martin's arrears for past due support in the amount of $14,000. This appeal followed.

## STANDARD OF REVIEW

This Court has set forth the following three-tiered procedure when reviewing a spousal support award:

> First, we must determine whether the trial judge correctly applied the proper legal standard or standards. We do not defer to the discretion or judgment of the trial judge on issues of law. Second, we must examine the trial judge's findings of fact. We will not overturn the trial judge's factual determinations unless, in light of the record taken as a whole, they are manifestly erroneous (or clearly wrong). Third, we must examine the propriety of the alimony award. If it is within legal limits and based on facts supported by the record, we will not alter the amount of the award in the absence of an abuse of the trial judge's great discretion to set such awards.

*Fontana v. Fontana*, 2013–0916, p. 9 (La. App. 4 Cir. 2/12/14), 136 So.3d 173, 180 (citing *Vincent v. Vincent*, 11–1822, p. 6 (La.App. 4 Cir. 5/30/12), 95 So.3d 1152, 1158).

## DISCUSSION

On appeal, Ms. Martin argues that the trial court erred in finding that Mr. Martin had shown a material change in circumstances sufficient to warrant a modification of the spousal support award. She further argues that the trial court committed legal error in making the modification retroactive to the date Mr. Martin filed the October 12, 2012 rule to show cause.

### Material Change in Circumstances

Ms. Martin presents two assignments of error regarding the trial court's finding that Mr. Martin's reduction in salary constituted a material change in circumstances. Ms. Martin argues that Mr. Martin was terminated from his position with the Hornets for violating company policies

and procedures. She claims that such "for cause" termination constitutes a voluntary change in circumstances that makes Mr. Martin ineligible for a reduction in his support obligation. She claims that her spousal support award should not be based on Mr. Martin's present salary, but rather should be based on Mr. Martin's earning potential because of the alleged voluntary change in circumstances.

■ When a party seeks judicial modification of a spousal support obligation, the threshold requirement is that the movant prove at least one party has undergone a material change in circumstances from the time the award was originally set. La. C.C. art. 114; La. R.S. § 9:311. The movant must show either "a change in the obligee's needs or the obligor's ability to pay." *Williams v. Poore*, 2010–1087, p. 10 (La. App. 4 Cir. 1/12/11), 55 So.3d 953, 959.

■ Louisiana distinguishes between voluntary and involuntary changes in circumstances where modification of support awards are concerned. Involuntary changes in circumstances are those that are caused by "fortuitous events or other circumstances beyond a person's control, such as loss of one's position or illness." La. R.S. § 9:315; *Kairdolf v. Kairdolf*, 46,035, p. 4 (La.App. 2 Cir. 3/2/11), 58 So.3d 527, 530. Voluntary changes in circumstances are those that result from the person's own fault or neglect. *Kairdolf*, 58 So.3d at 530. One who has undergone a voluntary change in circumstances is ineligible for a reduction in child or spousal support; rather, his support obligation will be calculated using his earning potential rather than his actual present income. La. R.S. § 9:315.11.

■ Whether a party is voluntary unemployed or underemployed is a question of good faith. *A.S. v. D.S.*, 2014-1098, p.8 (La.App. 4 Cir. 4/8/15), 165 So.3d 247,

253. Voluntary underemployment is a fact-based determination subject to the manifest error standard of review. *Id.* The manifest error standard of review is based, in part, "on the trial court's ability to better evaluate the testimony of live witnesses, compared with an appellate court's sole reliance upon a written record." *Id.* When presented with two permissible views of the evidence, "the trier of fact's choice between them cannot be manifestly erroneous." *Id.*

■ In support of her position that Mr. Martin was voluntarily underemployed because he had been terminated "for cause," Ms. Martin presented at trial a Personnel Action Form from the Hornets. The form indicated that Mr. Martin had been terminated for failure to comply with company policies and procedures. John McKinney, the Director of Human Resources with the Hornets while Mr. Martin was employed, testified as to the authenticity of the form and stated that Mr. Martin was fired for the reasons set forth in the form. It is of note that only Mr. McKinney signed the form while the line where the Divisional Leader, Mr. Hugh Weber, was to sign was blank.

Mr. Martin testified that he had never seen the form prior to the present litigation and that the form had not been completed properly. He stated that the form was incomplete because it was signed only by Mr. McKinney and not by the Divisional Leader as required per company policy. Mr. Martin testified that he received $50,000 in severance pay under a separation agreement and had been retained by the Hornets as a consultant, which he asserted would not have occurred had he been fired for misconduct. Mr. Martin further testified that had he been terminated for failure to comply with company policies he would not have been

eligible for the unemployment benefits that he was awarded.

The trial court determined that the evidence did not support a finding that Mr. Martin had been fired from his position with the Hornets for misconduct. The court found that Mr. Martin's termination from his position with the Hornets "was not voluntary such that he, in bad faith, reduced his own income in an effort to reduce his spousal support obligation." In its reasons for judgment, the court stated that the evidence, specifically the severance pay and consulting provisions of the separation agreement, did not support Ms. Martin's assertion that Mr. Martin was fired for cause. The court also found that Mr. Martin was not voluntarily underemployed in his position with the New Orleans Recreation Department, noting that Mr. Martin had submitted hundreds of resumes and was willing to relocate if need be to earn a salary close to the $150,000 a year he earned with the Hornets.

After determining that Mr. Martin had not been fired for cause and was not voluntarily underemployed, the trial court found that Mr. Martin had proven a material change in circumstances sufficient to warrant a modification of his spousal support obligation. The court found that since Mr. Martin's present salary was significantly lower than his salary when the original award was set he had shown a material change in circumstances. The court provided that this change in circumstances entitled him to a reduction in spousal support, subject to an application of the La. C.C. art. 112 factors.

The trial court's factual findings that Mr. Martin had not been terminated for cause, was not voluntarily underemployed, and that he had proven a material change in circumstances sufficient to warrant a modification in his spousal support obligation are supported by the evidence.

Therefore, we conclude the trial court was not manifestly erroneous as to these findings.

## Modification of the Final Periodic Spousal Support Obligation

■ Ms. Martin further argues on appeal that she sufficiently proved her need so that the court should not have reduced the award even if Mr. Martin proved a change in circumstances.

■ A judicial finding that a movant has shown a material change in circumstances does not automatically result in a modification of the award. *Williams*, 55 So.3d at 961. Rather, the effect of such a finding is that the burden shifts to the party opposing the modification to prove the need for support. *Id.* Absent evidence of domestic abuse, La. C.C. art. 112(D) limits the amount of a spousal support award at one-third of the obligor spouse's net income. The trial court has great discretion when setting the amount of a spousal support award, and so long as the award is within the legal limits the determination should not be disturbed absent a clear abuse of discretion. *Molony v. Harris*, 2009–1529, p. 2 (La.App. 4 Cir. 10/14/10), 51 So.3d 752, 756

La. C.C. art. 112(A) sets forth nine factors that a trial court may consider when setting or modifying a spousal support award. These factors include:

(1) The income and means of the parties, including the liquidity of such means.

(2) The financial obligations of the parties, including any interim allowance or final child support obligation.

(3) The earning capacity of the parties.

(4) The effect of custody of children upon a party's earning capacity.

(5) The time necessary for the claimant to acquire appropriate education, training, or employment.

(6) The health and age of the parties.

(7) The duration of the marriage.

(8) The tax consequences to either or both parties.

(9) The existence, effect, and duration of any act of domestic abuse committed by the other spouse upon the claimant, regardless of whether the other spouse was prosecuted for the act of domestic violence

La. C.C. art. 112.

At trial, both parties presented evidence regarding the relevant factors, including age, health, and earning capacities as well as their relative incomes, means, and financial obligations.

Both Mr. and Ms. Martin are in their late fifties. Mr. Martin has remarried and his current wife is employed full time. Ms. Martin is not presently married. Mr. Martin has no serious health issues that would impede his ability to work. Ms. Martin, however, suffers from a number of chronic health problems including diabetes, irritable bowel syndrome, spinal problems, and thyroid issues. Ms. Martin testified that these illnesses prevent her from working and as a result she is unemployed.

With regard to income and expenses, Ms. Martin testified that her only means of income other than spousal support is $1,399 a month in social security disability benefits. Ms. Martin presented an expense report that indicated her monthly expenses totaled approximately $4,339.20, which included both $1,200 a month for housing and $332 a month for a car she purchased in 2014. She attributed the remaining expenses to insurance, medication, utility payments, and other general living expenses. Mr. Martin testified that he has been unable within the past four years to find a job that pays him a salary compara-

ble to that which he was earning with the Hornets. Mr. Martin presented documentation that his present gross monthly income is $4,034 and his net monthly income is $3,292. He submitted an expense statement indicating that his monthly expenses total $6,559. He testified that his entire paycheck goes toward his and his current wife's monthly expenses.

On appeal, Ms. Martin has raised the issue of alleged domestic abuse during the marriage, which she argues permits the court to set her award at more than one-third of Mr. Martin's net income. In the reasons for judgment, the trial court addressed this allegation, which Ms. Martin raised for the first time in her post-trial memorandum. The court noted that Ms. Martin filed a Petition for Protection from Abuse in 2007, but that the petition was dismissed on Ms. Martin's motion without any finding of domestic violence by the court. The court stated that aside from a consent judgment entered into after the dismissal of the petition, whereby Mr. Martin was enjoined from harassing or physically abusing Ms. Martin, there were no other allegations of domestic violence in the record. The court pointed out that the allegation of abuse was not raised at the hearing, and since there was no evidence to support Ms. Martin's assertion of abuse the allegation, was not relevant to the proceeding.

Based on this information, the trial court found that Mr. Martin was entitled to a reduction and that Ms. Martin had shown her need for continued support. After considering Ms. Martin's continued needs and Mr. Martin's ability to pay, the trial court set the amount of final periodic spousal support at $1,400 a month. At approximately forty-two percent of Mr. Martin's net monthly income, this amount does exceed the limits placed on a spousal support award by La. C.C. art. 112(D). Mr. Martin has not objected to the amount as being

excessive, though, and the record indicates the trial court considered Mr. Martin's potential for earning additional income from consulting services when setting the award. Additionally, the trial court did not abuse its discretion in determining that Ms. Martin's unsupported allegations of abuse do not provide a basis for an increase in the award. As such, we conclude the trial court did not abuse its discretion in setting the amount of the award and affirm the judgment accordingly.

### Retroactivity of the Modification

On appeal, Ms. Martin also asserts that even if the trial court was correct in finding that a material change in circumstances existed to warrant a reduction in the amount of final periodic spousal support owed by Mr. Martin, the court erred in making the modification retroactive to October 19, 2012.

La. R.S. § 9:321 concerns the retroactivity of a judgment regarding the modification of a spousal support award. The statute provides that "[e]xcept for good cause shown, a judgment awarding, modifying, or revoking an interim spousal support allowance shall be retroactive to the date of judicial demand." La. R.S. § 9:321(A). A trial court has the discretion to limit or bar the retroactivity of a spousal support modification, but it cannot set the retroactive date prior the date of the judicial demand on which relief was granted. *Kaye v. Rebennack*, 2010–0871, p. 10 (La.App. 4 Cir. 3/9/11), 60 So.3d 1276, 1282.

Ms. Martin claims that the trial court committed legal error by making October 19, 2012, the effective date of the modification. She argues that the October 19, 2012 pleading filed by Mr. Martin was dismissed at the July 9, 2015 hearing when Mr. Martin failed to make an appearance. She claims that the modification can only be made retroactive to September 18, 2015, the date on which Mr. Martin filed the most recent motion to set the date for hearing on the matter.

The record indicates that Mr. Martin made an express judicial demand for modification of his final periodic spousal support award to Ms. Martin on October 19, 2012. While the transcript from the July 9, 2015 hearing does reflect that Mr. Martin failed to appear and that the judge orally dismissed the rule, the dismissal was never reduced to writing. Such a verbal dismissal alone is not sufficient without a signed writing evidencing the dismissal. *Louisiana Nat. Bank v. Hebert*, 398 So.2d 632, 634 (La. App. 4 Cir. 1981). As this Court has stated, "[e]ven where a minute entry ... reflects that the district court judge rendered judgment orally, where there is no signed judgment in the record, there is no final judgment from which appeal to a Court of Appeal can be taken, the appeal is premature, and the Court of Appeal is required *ex proprio motu* to dismiss the appeal." *Id.* Since Mr. Martin's October 19, 2012 pleading was never formally dismissed in writing, that particular rule to show cause remained the pleading on which relief was granted. Therefore, October 19, 2012 was the proper date of express judicial demand on the matter of spousal support.

As the oral dismissal was never reduced to a written and signed judgment, the trial court did not commit legal error in making the modification retroactive to October 19, 2012. Rather, the trial court acted within its discretion in setting the retroactive date.

### CONCLUSION

For the above reasons, the trial court's judgment is affirmed.

**AFFIRMED**